UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSZETTA MARIE McNEILL,

      Plaintiff,

                              Case No. 08-10658
v.                              Hon. Gerald E. Rosen

WAYNE COUNTY, CATHY GARRETT,
ROBERT A. FICANO, WAYNE COUNTY
SHERIFF'S OFFICE, and WARREN C. EVANS,

      Defendants.
_____/

## OPINION AND ORDER REGARDING CROSS-MOTIONS FOR RULE 11 SANCTIONS AND DEFENDANTS' MOTION TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 23, 2009

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Roszetta Marie McNeill, proceeding *in pro per,* commenced this suit in

this Court on February 15, 2008, asserting claims against her former employer, Defendant

Wayne County, and several Wayne County officials under the federal Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* the Michigan Persons With

Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq.,* and the Michigan

Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361 *et seq.*  This Court's subject

matter jurisdiction rests upon Plaintiff's assertion of claims arising under a federal statute,

the ADA.  *See* 28 U.S.C. §§ 1331, 1367(a).

In lieu of answering the complaint, Defendants have filed a May 6, 2008 motion to

dismiss, arguing that Plaintiff's claims are subject to dismissal under principles of claim

and issue preclusion and under the *Rooker-Feldman* doctrine.  In support of this motion,

Defendants point to a number of previous federal and state-court suits brought by Plaintiff

against Wayne County and various county officials and employees, and they contend that

each of the claims asserted in the present suit either were or could have been pursued in

these prior actions.  In addition to this motion, Plaintiff and Defendants each have filed a

motion seeking the imposition of sanctions under Fed. R. Civ. P. 11.

Each of these motions has been fully briefed by the parties.  Having reviewed the

parties' briefs in support of and opposition to Defendants' motion to dismiss and the

cross-motions for sanctions, as well as the accompanying exhibits, Plaintiff's underlying

complaint, and the record as a whole, the Court finds that the relevant facts, allegations,

and legal arguments are adequately presented in these written materials, and that oral

argument would not aid the decisional process.  Accordingly, the Court will decide these

motions "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of

Michigan.  This opinion and order sets forth the Court's rulings on these motions.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Roszetta McNeill was initially hired by Defendant Wayne County in

1997, and remained employed by the County, with some periods of interruption, until her

discharge in August of 2007.  As discussed in an opinion in an earlier suit brought by

2

Plaintiff in this Court against Defendant Wayne County and various County officials,[1] the

parties' relationship has been a tumultuous one.  Plaintiff resigned from her position on at

least two occasions, but each time was rehired.  During the period of Plaintiff's

employment, the County was informed that she had been diagnosed with lupus and

thrombocytopenia, and that her physician had imposed a restriction against lifting more

than 25 pounds.  Yet, Plaintiff has claimed at various points throughout her employment

that the County has failed to proper accommodate her medical conditions and limitations,

and she has filed a number of charges with the Equal Employment Opportunity

Commission ("EEOC") challenging the County's treatment of her.

Plaintiff also has brought a number of lawsuits complaining of this alleged

mistreatment.  Apart from the previous action brought in this Court in 2005, Plaintiff has

filed a number of complaints in Michigan state court encompassing various time frames

and aspects of her Wayne County employment.  Most significantly for present purposes,

she commenced a state-court suit on September 17, 2007 ("the September 2007 action"),

in which she asserted state-law tort claims arising from the actions of the County and

certain County officials and employees in the period from May to August of 2007,

culminating in her August 2007 discharge.  By order and judgment dated February 15,

---

[1]*See McNeill v. Wayne County,* No. 05-72885, slip op. at 3-4 (E.D. Mich. Sept. 28, 2007). In this opinion, the Court granted summary judgment in favor of Wayne County and the other defendants as to Plaintiff's ADA claims, and declined to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.  This ruling subsequently was affirmed by the Sixth Circuit Court of Appeals. *See McNeill v. Wayne County,* 300 F. App'x 358, 2008 WL 4830701 (6th Cir. Nov. 6, 2008).

2008, the state court granted the County's motion to dismiss and dismissed Plaintiff's

claims with prejudice. (*See* Defendants' Motion to Dismiss, Ex. 6.)[2]

While this September 2007 action was pending, Plaintiff filed another charge with

the EEOC, evidently claiming that she had been subjected to harassment, denied a

reasonable accommodation of her disability, and discharged because of her disability and

in retaliation against her filing of previous EEOC charges. (*See* Complaint, Ex. A.)[3] On

December 19, 2007 — while the September 2007 action remained pending — the EEOC

issued a right-to-sue letter, informing Plaintiff that the agency had completed its

investigation and had elected not to take any further action. (*See id.*) This lawsuit

followed on February 15, 2008 — the same day the state court dismissed the September

2007 action — with Plaintiff asserting a federal ADA claim and two state-law claims

arising from actions allegedly taken by the County and County officials between May and

August of 2007 in a purported effort to "force the Plaintiff out of her job." (Complaint at

¶ 27.)[4]

---

[2]It does not appear that Plaintiff took an appeal from this state court ruling.

[3]Although Plaintiff has not provided her EEOC charge as an exhibit to her complaint, exhibit A to the complaint is the EEOC's right-to-sue letter issued to Plaintiff, and the agency summarizes Plaintiff's allegations in the materials accompanying this letter.

[4]Although some of the complaint's allegations concern actions taken or incidents occurring prior to May of 2007 — and, indeed, dating as far back as the beginning of Plaintiff's employment with the County in 1997 — these appear to be provided for background only, and not as support for the claims asserted in the complaint. In any event, any attempt to rely upon these earlier incidents as support for a present theory of recovery surely would be unsuccessful, whether on grounds of claim preclusion or under the relevant statutes of limitations. Indeed, in Plaintiff's prior federal court suit, this Court ruled that her ADA claims were time-barred to the extent that they were based upon actions or incidents occurring prior to July of 2004, *see*

### III. ANALYSIS

**A.      The Standards Governing Defendants' Motion to Dismiss**

In lieu of answering Plaintiff's complaint, Defendants seek the dismissal of

Plaintiff's claims on grounds of issue and claim preclusion and under the *Rooker-*

*Feldman* doctrine.  When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6),

the Court is required to accept as true the well-pleaded factual allegations set forth in the

complaint.  *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987); *Westlake*

*v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976).  However, the Court "need not accept as true

legal conclusions or unwarranted factual inferences."  *Morgan,* 829 F.2d at 12.

In the aftermath of the Supreme Court's recent decision in *Bell Atlantic Corp. v.*

*Twombly,* 127 S. Ct. 1955 (2007), the Sixth Circuit has explained that a plaintiff's factual

allegations, while "assumed to be true, must do more than create speculation or suspicion

of a legally cognizable cause of action; they must show entitlement to relief."  *League of*

*United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 1987).  "To state

a valid claim, a complaint must contain either direct or inferential allegations respecting

all the material elements to sustain recovery under some viable legal theory."  *Bredesen,*

500 F.3d at 527.

---

*McNeill,* No. 05-72885, slip op. at 7-10, and the same would surely hold true here.

**B.**     **Plaintiff's Claims Are Barred by Principles of Claim Preclusion, Where She Could Have Pursued These Claims in the September 2007 State Court Action.**

Defendants' motion to dismiss rests upon a simple premise — namely, that

Plaintiff had the opportunity in her several prior state-court suits, and perhaps also in her

prior action in this Court, to raise each of the claims she has asserted in her present

complaint.  Because she did not avail herself of this opportunity, Defendants argue that

these claims are barred by principles of issue and claim preclusion, and also under the

*Rooker-Feldman* doctrine.  The Court agrees that the doctrine of claim preclusion is

applicable here, and thus need not address any alternative grounds for dismissal.

The federal Full Faith and Credit Act mandates that state court proceedings and

records "shall have the same full faith and credit in every court within the United States . .

. as they have by law or usage in the courts of such State . . . from which they are taken."

28 U.S.C. § 1738.  "This statute has long been understood to encompass the doctrines of

res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'"  *San*

*Remo Hotel, L.P. v. City & County of San Francisco,* 545 U.S. 323, 336, 125 S. Ct. 2491,

2500 (2005).[5]  The Act reflects and implements the "general rule" that "parties should not

--------

[5]The Supreme Court has explained:

> Under res judicata [or claim preclusion], a final judgment on the merits of
> an action precludes the parties or their privies from relitigating issues that were or
> could have been raised in that action.  Under collateral estoppel [or issue
> preclusion], once a court has decided an issue of fact or law necessary to its
> judgment, that decision may preclude relitigation of the issue in a suit on a
> different cause of action involving a party to the first case.

*San Remo Hotel,* 545 U.S. at 336 n.16, 125 S. Ct. at 2500 n.16 (internal quotation marks and

be permitted to relitigate issues that have been resolved by courts of competent jurisdiction." *San Remo Hotel,* 545 U.S. at 336, 125 S. Ct. at 2501. As is evident from the Act itself, the preclusive effect of a state court ruling is determined by resort to that state's law of claim and issue preclusion. *See Darrah v. City of Oak Park,* 255 F.3d 301, 311 (6th Cir. 2001). In this case, then, the Court must look to Michigan law in determining whether, and to what extent, the judgment issued by the state court in the September 2007 action precludes Plaintiff from going forward with her present ADA and state-law claims.

The Michigan Supreme Court "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State,* 470 Mich. 105, 680 N.W.2d 386, 396 (2004). Under Michigan law, the doctrine of res judicata, or claim preclusion, "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair,* 680 N.W.2d at 396. Accordingly, the question here is whether these three elements are satisfied as to the September 2007 action.

First, it is clear that the September 2007 action was decided on the merits, as the state court entered a judgment in which Plaintiff's claims were dismissed with prejudice,

_____

citation omitted).

and which lacked any language limiting the scope of the matters decided. *See*

*Washington v. Sinai Hospital of Greater Detroit,* 478 Mich. 412, 733 N.W.2d 755, 759-

60 (2007).[6]  Next, as to identity of parties, the principal Defendant here, Wayne County,

also was named as a defendant in the September 2007 action.  While not all of the

Defendants in the present suit were named as defendants to the September 2007 action,[7]

Plaintiff's complaint in this case lacks any allegations whatsoever directed at these

individuals, and instead refers collectively to actions taken by the "Defendants."[8]  Thus,

Plaintiff evidently seeks to pursue a theory of vicarious liability as to these individuals,[9]

and they consequently may be viewed as "in privity" with Defendant Wayne County for

purposes of the claims brought against them in this case.  *See Adair,* 680 N.W.2d at 396-

97 (explaining that to satisfy the second element of the test for claim preclusion, "a

perfect identity of the parties is not required, only a 'substantial identity of interests' that

are adequately presented and protected by the first litigant"); *see also Motuelle v. Ruffini,*

No. 244557, 2004 WL 1254304, at *3-*4 (Mich. Ct. App. June 8, 2004) (finding that

---

[6]It further appears, and Plaintiff does not dispute, that this judgment is final, where the Court's research has failed to uncover any evidence that Plaintiff pursued an appeal of this ruling to the Michigan Court of Appeals.

[7]Specifically, Wayne County Executive Robert A. Ficano and Wayne County Sheriff Warren C. Evans are named as Defendants in Plaintiff's present suit, but were not among the individual defendants named in Plaintiff's complaint in the September 2007 action.

[8]Indeed, the complaint more commonly refers to a single "Defendant," in contexts where it is clear that Plaintiff is speaking of actions taken by Wayne County as her employer.

[9]The Court expresses no view as to the viability of this theory under the ADA or the two Michigan statutes that give rise to Plaintiff's claims here.

parties were in privity by virtue of their employer-employee relationship); *Coatney v. City of Dearborn,* No. 07-15371, 2009 WL 322032, at *3 (E.D. Mich. Feb. 10, 2009) (holding that employees of the defendant city were in privity with the city).[10]

This leaves only the question whether the claims in this case were or could have been raised in the September 2007 action.  In resolving this question, the Michigan courts have adopted a "transactional approach," under which claims in a subsequent case are barred if they "ar[i]se from the same transactions" as the claims in the earlier case.  *Adair,* 680 N.W.2d at 398.  As discussed earlier, it is evident that the claims here and in the September 2007 action arise from the same underlying transactions — namely, the difficulties experienced by Plaintiff in the course of her employment with Defendant Wayne County between May of 2007 and her discharge in August of 2007.  While the theories of recovery in the two cases differ — Plaintiff asserted state-law tort claims in the September 2007 action, as opposed to the employment discrimination, retaliation, and wrongful discharge claims asserted here under the ADA and two Michigan statutes — the commonality in the underlying facts and allegations is sufficient to satisfy the third and final prerequisite to the application of claim preclusion.

---

[10]In any event, it is not clear that strict identity would be required as between Defendants here and the defendants in the state court suit, where Defendants seek to make defensive use of the doctrine of claim preclusion to prevent Plaintiff from relitigating claims that she raised or could have raised in the September 2007 action.  *See Monat v. State Farm Insurance Co.,* 469 Mich. 679, 677 N.W.2d 843, 850-51 (2004) (holding that mutuality of estoppel is no longer required for the defensive use of the doctrine of issue preclusion); *see also Motuelle,* 2004 WL 1254304, at *4 n.3 (citing *Monat* in concluding that "mutuality is similarly not required" to invoke claim preclusion defensively).

One minor complication remains, however, as to Plaintiff's claims under the federal ADA.  At the time Plaintiff commenced the September 2007 action, she had not yet filed her most recent EEOC charge, and thus she had yet to receive a right-to-sue letter concerning the allegations made in this charge.  Rather, she evidently filed this charge on October 2, 2007, and the EEOC issued a right-to-sue letter on December 19, 2007.  (*See* Plaintiff's Complaint, Ex. A.)  Because administrative exhaustion (and a resulting right-to-sue letter) generally is a prerequisite to bringing an ADA claim, *see Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299, 309 (6th Cir. 2000), it might seem incongruous to conclude that Plaintiff could have asserted such a claim in a suit commenced ***before*** she had satisfied this prerequisite.

Nonetheless, the Sixth Circuit has reached precisely this conclusion under circumstances that are legally indistinguishable from those presented here.  In *Heyliger v. State University & Community College System of Tennessee,* 126 F.3d 849, 851 (6th Cir. 1997), the plaintiff filed an EEOC charge in September of 1990 complaining of Title VII violations, and then commenced a state court suit in December of 1990 in which he asserted claims under Tennessee law.  The state court awarded summary judgment against the plaintiff and in favor of the defendants nearly three years later, and the EEOC issued a right-to-sue letter shortly thereafter.  Upon receiving this letter, the plaintiff brought a Title VII action in federal court, but the district court dismissed the suit on grounds of claim preclusion.

On appeal, the plaintiff argued that he could not have asserted his Title VII claim

10

in the state court suit — and, therefore, claim preclusion did not apply — because a

judgment had already been entered in that suit before the EEOC issued its right-to-sue

letter.  The Sixth Circuit rejected this contention, citing the plaintiff's entitlement under

Title VII and its implementing regulations to obtain a right-to-sue letter 180 days after he

filed his EEOC charge.  *Heyliger,* 126 F.3d at 855.  Had he exercised this right, he would

have received a right-to-sue letter while the state court suit was still pending, and he

"could have folded his Title VII claim into his action in state court."  126 F.3d at 855-56.

This, in the court's view, was sufficient to trigger the plaintiff's obligation to pursue his

Title VII claim in the state court suit, and to warrant the application of claim preclusion

when he failed to do so.  126 F.3d at 856; *see also Rivers v. Barberton Board of*

*Education,* 143 F.3d 1029, 1033 (6th Cir. 1998) (following *Heyliger* and applying claim

preclusion where the plaintiff "had the opportunity and burden of perfecting her Title VII

claim before or during the pendency of" a prior suit); *see generally Wilkes v. Wyoming*

*Department of Employment Division of Labor Standards,* 314 F.3d 501, 505-06 (10th Cir.

2002) (collecting cases from a number of other circuits that have reached this conclusion,

and then adopting this principle as Tenth Circuit law).

   If claim preclusion extends to cases where a plaintiff has not yet received a right-

to-sue letter but merely has the ability to obtain one, it surely applies to the circumstances

presented here, where Plaintiff ***actually received*** her right-to-sue letter while the

September 2007 action was still pending in state court, and nearly two months before the

state court entered its judgment on February 15, 2008.  Not surprisingly, the courts have

reached precisely this conclusion. *See, e.g., Holder v. City of Cleveland,* No. 07-3484, 287 F. App'x 468, 471-72 (6th Cir. July 17, 2008); *Schulz v. Hope Network Rehabilitation Services,* No. 4:06-CV-23, 2007 WL 330201, at *3 (W.D. Mich. Jan. 31, 2007). Accordingly, the Court finds that Plaintiff's claims in this case are barred by principles of claim preclusion.

**C.      The Court Declines to Impose Sanctions on Either Party in This Case.**

As noted, both Plaintiff and Defendants have moved for the imposition of sanctions against the opposing party pursuant to Fed. R. Civ. P. 11. Plaintiff's motion clearly must be denied, as it rests upon the premise that Defendants have asserted a frivolous res judicata defense. The Court having determined that Plaintiff's claims are subject to dismissal on this ground, it readily follows that Defendants' motion was not frivolous and did not violate Rule 11.

Although Defendants' motion for sanctions presents a closer question, the Court finds that sanctions should not be imposed on Plaintiff in this case. As the Sixth Circuit has explained, "the test for the imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances." *Tropf v. Fidelity National Title Insurance Co.,* 289 F.3d 929, 939 (6th Cir. 2002) (internal quotation marks and citation omitted). If Plaintiff sought in this case merely to relitigate precisely the same claims she had asserted in the September 2007 action or in some other prior suit, the Court would tend to agree that such conduct would be unreasonable. Here, however, Plaintiff has attempted to split her claims between this suit and the September 2007 action. While the

12

Michigan law of claim preclusion generally defeats such claim-splitting efforts, it is not

surprising (or unreasonable) that a *pro se* litigant would be unfamiliar with this law.  This

unfamiliarity is all the more excusable, in this Court's view, where one of the claims

asserted in this case arises under federal law — and thus might be thought to "belong" in

federal court, at least to a *pro se* litigant who is unschooled in the relevant law — and

where, as explained earlier, the law of this Circuit requires litigants to take advantage of

any opportunity to add newly-ripened federal Title VII and ADA claims into an existing

suit, even if the requisite right-to-sue letter is not received until after the commencement

of this suit.

To be sure, while Plaintiff might have been unaware of the precise parameters of

claim preclusion when she brought this suit, she was soon alerted to this issue when

Defendants' sought the dismissal of her claims on this ground.  The Court recognizes that

it is reasonable to insist that a *pro se* litigant become better educated about a legal

doctrine raised in an opposing party's motion, and to impose appropriate sanctions in the

event that this litigant elects to prolong the case rather than abandon claims that have no

prospect of surviving the opposing party's challenge.  Nonetheless, it is important to note

that Defendants' motion to dismiss in this case was supported by a "boilerplate" and

extremely general two-page brief, in which Defendants devoted one paragraph each to a

broad description of claim preclusion, issue preclusion, and the *Rooker-Feldman* doctrine.

No effort was made in this submission to apply these principles to the facts of this case,

nor to address such finer points as, for example, Plaintiff's receipt of a right-to-sue letter

13

only after she had commenced the September 2007 action.  Under these circumstances, the Court cannot say that Plaintiff was unreasonably resistant to Defendants' efforts to educate her about the deficiencies in her claims.

The Court acknowledges Defendants' concern that Plaintiff has proven to be a "serial filer" of EEOC charges and lawsuits that generally have been found to lack merit. The Court further recognizes that Rule 11 sanctions need not be monetary, but may include, for example, an injunction against filing further suits without first seeking and securing leave to do so.  *See* Fed. R. Civ. P. 11(c)(4); *see also Ortman v. Thomas,* 99 F.3d 807, 811 (6th Cir. 1996).[11]  While the Court declines to enter such an injunction at this time, Plaintiff is cautioned that any subsequent actions she files against Defendant Wayne County or its officials or employees concerning her employment with the County will be carefully scrutinized by this Court to ensure that they are not frivolous or vexatious, and that suitably severe sanctions, both monetary and injunctive, will be imposed in the event that Plaintiff's future submissions run afoul of these standards.

---

[11]Indeed, it appears that the state court has entered such an injunction against Plaintiff.

14

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' May 6, 2008

motion to dismiss (docket #12) is GRANTED.  IT IS FURTHER ORDERED that

Plaintiff's July 9, 2008 motion for Rule 11 sanctions (docket #16) is DENIED.  Finally,

IT IS FURTHER ORDERED that Defendants' July 24, 2008 motion for Rule 11

sanctions (docket #17) is DENIED.


s/Gerald E. Rosen
Chief  Judge, United States District Court

Dated:  March 23, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 23, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager